1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **CENTRAL DISTRICT OF CALIFORNIA**
10
11  **DENISE A. F.,**[1]                    )   **NO. CV 18-5180-KS**
                      **Plaintiff,**        )
12          **v.**                          )   **MEMORANDUM OPINION AND ORDER**
13                                          )
    **ANDREW M. SAUL**, **Commissioner**    )
14  **of Social Security,**                 )
15                      **Defendant.**       )
16  _____ )
17
18                    **INTRODUCTION**
19
20          Plaintiff filed a Complaint on June 12, 2018, seeking review of the denial of her
21  application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security
22  Act.  (Dkt. No. 1.)  The parties have consented, pursuant to 28 U.S.C. § 636(c), to proceed
23  before the undersigned United States Magistrate Judge.  (Dkt. Nos. 8, 13.)  On April 1, 2019,
24  the parties filed a Joint Stipulation.  (Dkt. No. 24 ("Joint Stip.").)  Plaintiff seeks an order
25  reversing the Commissioner's decision with an award of disability benefits.  (Joint Stip. at 33-
26  34.)  The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, that
27
    _____
28  [1]      Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the
    Committee on Court Administration and Case Management of the Judicial Conference of the United States.

                                    1

the matter be remanded for further administrative proceedings. (*Id.* at 34-35.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On July 21, 2014, Plaintiff filed an application for DIB. (Administrative Record ("AR") 15, 187-88.) Plaintiff alleged disability beginning on June 26, 2014 because of diabetes type two, degenerative disc disease of the cervical and lumbar spines, anxiety, depression, and diabetic neuropathy. (AR 71, 84.)[2] After the Commissioner initially denied Plaintiff's applications (AR 71-83; 84-95), Plaintiff requested a hearing (AR 109-10). At an initial hearing held on January 12, 2017, at which Plaintiff appeared with counsel, an Administrative Law Judge ("ALJ") heard testimony from Plaintiff, a medical expert, and a vocational expert. (AR 517-74.) A supplemental hearing was held on March 9, 2017. (AR 30-70.) Plaintiff's counsel appeared at the supplemental hearing without Plaintiff, who waived her right to appear because she was recovering from a cervical spine fusion performed one month earlier. (AR 32-33.) During the supplemental hearing, the ALJ heard testimony from a medical expert and a vocational expert. (AR 30-70.) On June 22, 2017, the ALJ issued an unfavorable decision denying Plaintiff's application for DIB. (AR 15-24.) On May 24, 2018, the Appeals Council denied Plaintiff's request for review. (AR 1-6.)

## SUMMARY OF ADMINISTRATIVE DECISION

Applying the five-step sequential evaluation process, the ALJ made the following findings. The ALJ made an initial finding that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. (AR 17.) The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date

---

[2] Plaintiff was 58 years old on her alleged disability onset date (AR 71, 84) and thus met the agency's definition of a person of advanced age. *See* 20 C.F.R. § 404.1563(e).

of June 26, 2014. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar and cervical spine, status-post lumbar fusion in July 2015 and cervical fusion in February 2017." (*Id.* (internal citations omitted).) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (AR 19.) The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform "sedentary work" as follows:

> [She] can lift and/or carry less than 10 pounds occasionally. She must shift position for two to three minutes every hour of sitting while remaining at the workstation. In addition, she can occasionally perform postural activities.

(AR 19.)

At step four, the ALJ found that Plaintiff could perform her past relevant work as an appointment clerk and billing clerk, as generally performed in the economy. (AR 24.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.*)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citations omitted). "Even when the evidence is susceptible

to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citation omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

## DISCUSSION

The parties raise four issues: (1) whether the ALJ erred in finding that Plaintiff did not have a "severe" mental impairment; (2) whether the ALJ erred in the assessment of the medical opinion evidence in the record regarding Plaintiff's physical limitations; (3) whether the ALJ erred in rejecting Plaintiff's testimony regarding her subjective symptoms and functional

limitations; and (4) whether the ALJ erred in finding that Plaintiff has the ability to perform her past relevant work. (Joint Stip. at 3.)

## I. The ALJ Erred In Assessing Plaintiff's Mental Impairment (Issue One)

### A. Legal Standard

Step two of the Commissioner's five-step evaluation requires the ALJ to determine whether an impairment is severe or not severe. *See* 20 C.F.R. § 404.1520(a). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." An impairment is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). In other words, an impairment is not severe "when medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have *no more than a minimal effect on an individual's ability to work*." *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (citing Social Security Ruling ("SSR") 85-28) (emphasis in original). For mental impairments, examples of basic work activities are the ability to understand, carry out, and remember simple instructions; the use of judgment; the ability to respond appropriately to supervision, coworkers, and usual work situations; and the ability to deal with changes in a routine work setting. *See* SSR 85-28, 1985 WL 56856, at *3.

Plaintiff's step two argument involves the ALJ's assessment of the opinions of a treating physician and an examining physician. There are three categories of physicians: treating physicians, examining physicians, and non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Treating physician opinions should be given more weight than examining or non-examining physician opinions. *Orn*, 495 F.3d at 632. This is because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation

omitted).  If the treating physician's opinion is not contradicted by another doctor, it may be rejected only if the ALJ provides "clear and convincing reasons supported by substantial evidence in the record."  *Orn*, 495 F.3d at 632.  If the treating physician's opinion is contradicted by another doctor, it may be rejected only by "specific and legitimate reasons supported by substantial evidence in the record."  *Id*.  The same standard applies for an examining physician's opinion:  an uncontradicted opinion requires clear and convincing reasons supported by substantial evidence in the record, while a contradicted opinion requires specific and legitimate reasons supported by substantial evidence in the record.  *See Lester*, 81 F.3d at 830-31.

## B. Background

Dr. Stephen Erhart, an examining psychiatrist, performed a complete psychiatric evaluation of Plaintiff in August 2014.  (AR 313-18.)  Although the evaluation did not include a review of medical records, it included an interview and a mental status examination.  (*Id*.)  During the interview, Plaintiff stated that she had "irrational fears," including a fear that she would have an accident while driving.  (AR 314.)  She reported compulsive behavior such as "checking," which apparently explained her decision to stop working due to "obsessive-compulsive disorder."  (*Id*.)

Upon mental status examination, Dr. Erhart found that, *inter alia*, Plaintiff's "mood was apprehensive," her "affect was restricted," and her thought content included "susceptibility to irrational fears as well as accompanying indecisiveness and compulsive behaviors."  (AR 316-17.)  Dr. Erhart also found that Plaintiff "describes phobic avoidance as well a restricted sense of optimism."  (AR 317.)  Otherwise, the mental status examination was unremarkable.  (AR 316-17.)  Dr. Erhart diagnosed an obsessive-compulsive disorder and an anxiety disorder not otherwise specified.  (AR 317.)  As for mental limitations, Dr. Erhart stated that Plaintiff's "ability to comply with job rules, such as safety and attendance, was severely impaired by

irrational avoidance behaviors primarily impacting driving." (AR 317.) Dr. Erhart further stated that Plaintiff's "ability to respond to changes in a routine work setting was moderately impaired by indecision." (*Id*.)

Dr. Salvador Arella was Plaintiff's treating psychiatrist beginning in June 2015. (AR 490.) Upon initial examination, Dr. Arella found no abnormalities and found Plaintiff to be "intact" in areas of orientation, memory, concentration, attention, judgment, and insight. (AR 490-91.) Dr. Arella diagnosed Plaintiff with a panic disorder without agoraphobia, and prescribed Wellbutrin, Remeron, and Xanax. (AR 491.) He later added prescriptions for Lamictal, Diazepam, and Clonazepam. (AR 492.) In November 2016, during an office visit, Dr. Arella observed that Plaintiff was alert, oriented, and well-dressed; that her cognition was intact; that her speech was clear and understandable; that she denied hallucinations and paranoia; and that she was not a risk to herself or others. (AR 472.)

On the same day as the office visit in November 2016, Dr. Arella completed a mental residual functional capacity assessment. (AR 494-96.) Dr. Arella stated that Plaintiff's mental problems began in approximately 2011 and that she was "markedly" impaired in most of the mental functioning areas listed in the assessment. (AR 494-95.) By way of explanation, Dr. Arella wrote the following:

> In my opinion [Plaintiff] does not have the ability to focus due to anxiety and fear.
> She exhibits a confused thinking process. Her short term memory is affected. At
> times she has an unreasonable fear of everyday life activities, such as driving,
> walking, shopping, etc. She has a great fear of earthquakes and therefore she
> cannot use elevators, and she has great anxiety in high rise buildings or freeway
> overpasses. There are some days she cannot drive at all due to fear and anxiety.

//
//

In my opinion, anxiety, fear and depression, plus constant physical pain, strain her limitations to function in a work setting. She has a fear of the public in general, fear of being in a crowd, emotionally uneasy in dealing with people. She does not have a support group in her personal life.

Some medications may make it unsafe for her to drive. Depression and anxiety require medication in order to facilitate an attempt to normalize her life.

(AR 496.)

Dr. Heather Barrons and Dr. Robert Liss, non-examining state agency physicians, reviewed Plaintiff's medical record as it related to her mental allegations. (AR 78, 90.) In pertinent part, Dr. Barrons noted that although Plaintiff reported she left her job because of obsessive-compulsive disorder, she received no treatment for it. (AR 78.) Dr. Barrons also noted that Plaintiff's examination by Dr. Erhart was within normal limits other than an "apprehensive" mood, and that her activities of daily living were intact. (*Id*.) Finally, Dr. Barrons noted that Plaintiff made inconsistent statements about driving, that her activities included shopping and managing finances, and that she reported she can follow instructions. (*Id*.) Thus, Dr. Barrons recommended that the Commissioner find Plaintiff's mental impairment to be "non-severe." (*Id*.) Dr. Liss agreed. (AR 90.)

### C.     Analysis

The ALJ determined that although Plaintiff had a medically determinable mental impairment of an anxiety disorder, it was not severe. (AR 18.) Instead, the ALJ found at step two that Plaintiff's severe impairments consisted only of the disorders of her cervical and lumbar spines. (AR 17.) The ALJ then proceeded to steps three and four. (AR 19, 23.)

//

As an initial matter, Plaintiff's characterization of this issue as a step two issue arguably is misplaced. Because Plaintiff prevailed at step two (but with fewer impairments than she had alleged), her claim of prejudicial error from step two is meritless. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (holding that because step two was decided in the claimant's favor, he was not prejudiced); *see also Loader v. Berryhill*, 722 F. App'x 653, 654-55 (9th Cir. 2018) (where the claimant prevailed at step two, and his case proceeded to the remaining steps on the basis of "other" severe impairments, "it made no difference for the ALJ's ensuing analysis whether his medically determinable depression was previously considered 'severe'"). Instead, the question is whether, as Plaintiff ultimately alleges, the ALJ's ensuing analysis properly accounted for the limitations caused by her medically determinable mental impairment, as reflected in the opinions of Dr. Erhart and Dr. Arella. *See Loader*, 722 F. App'x at 655 (finding that, where a claimant prevailed beyond step two, the issue was whether the limitations from her depression were properly considered, even though it was categorized as non-severe) (citing 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe[.]'")).

In assessing the limitations caused by Plaintiff's anxiety disorder, the ALJ gave "little weight" to Dr. Erhart's opinion (AR 22), "little weight" to Dr. Arella's opinion (AR 22-23), and "great weight" to Dr. Barrons's and Dr. Liss's opinions (AR 18). Plaintiff disputes the ALJ's analysis of Dr. Erhart's and Dr. Arella's opinions. (Joint Stip. at 7-9.) To discount their opinions, which conflicted with the opinions of the state agency physicians, the ALJ was required to state specific and legitimate reasons supported by substantial evidence in the record. *See Lester*, 81 F.3d at 830-31. As discussed below, the ALJ's reasons were legally sufficient as to Dr. Arella but not as to Dr. Erhart.

//
//
//

### 1. Dr. Arella

The ALJ gave little weight to Dr. Arella's opinion for two reasons. (AR 22-23.) First, the ALJ found that Dr. Arella's extreme restrictions were "inconsistent with the record as a whole and unsupported by explanation, internal evidence, or the doctor's own treating records, which repeatedly indicate that her condition is stable — including on the date he completed his medical source statement." (AR 22.) This was a specific and legitimate reason based on substantial evidence. An ALJ may give minimal weight to a treating physician's opinion that conflicts with the medical record as a whole. *See Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004). Nothing in the record was consistent with Dr. Arella's assessment of several "marked" limitations in Plaintiff's mental functioning. As the ALJ explained, on the same day Dr. Arella completed that assessment, Plaintiff's mental status examination was wholly unremarkable. (AR 471-72.) Moreover, Dr. Arella's explanation that Plaintiff exhibited problems in thinking and memory was contradicted by his notes showing she was "intact" in these areas. (AR 491.)

Second, the ALJ found that Dr. Arella "relates his assessment to approximately 2011 [AR 494], yet he did not begin treating [Plaintiff] until June 2015 [AR 490]." (AR 22.) This also was a specific and legitimate reason based on substantial evidence. "After-the-fact psychiatric diagnoses are notoriously unreliable." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). The record contained no evidence suggesting that Plaintiff's mental problems began in approximately 2011.

### 2. Dr. Erhart

The ALJ gave the following explanation for giving less weight to Dr. Erhart's opinion: "The doctor examined the claimant on a single occasion and did not review any of her medical records [AR 314]. In addition, his assessment appears to rely on [Plaintiff's] subjective

10

complaints and is inconsistent with her activities of daily living and minimal treatment." (AR 18.) The Court considers each part of this explanation in turn.

First, the fact that Dr. Erhart examined Plaintiff on a single occasion and did not review any of her medical records was not a significant and legitimate reason. Examining physicians usually only see a claimant once. *See Sorrell v. Colvin*, 2015 WL 1152781, at *7 (N.D. Cal. Mar. 13, 2015) ("Others district courts have found the fact a physician examined a claimant only once is not a specific and legitimate reason to reject the opinion.") (collecting cases). Moreover, the fact that Dr. Erhart did not review any of Plaintiff's medical records is not a specific and legitimate reason in the context here. No mental health records were available for Dr. Erhart to review: Dr. Erhart examined Plaintiff in August 2014 (AR 313), but Plaintiff did not begin receiving mental health treatment until June 2015 (AR 490).

Second, the ALJ's finding that Dr. Erhart's assessment appeared to rely on Plaintiff's subjective complaints is also not a specific and legitimate reason supported by substantial evidence. To the extent Dr. Erhart considered Plaintiff's subjective complaints, it was expected given the nature of the examination. *See Buck*, 869 F.3d at 1049 ("Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry."). In any event, Dr. Erhart did not rely solely on Plaintiff's subjective complaints, but also conducted a clinical interview and a mental status examination (AR 314-17), which are objective medical measures. *See Buck*, 869 F.3d at 1049 ("Dr. Kenderdine also conducted a clinical interview and a mental status evaluation. These are objective measures and cannot be discounted as a 'self-report.'"); *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (psychiatric evaluation was not based on the claimant's subjective complaints where there was a "Mental Status Examination" portion of the exam where the psychiatrist recorded several of his own clinical observations); *Still v. Berryhill*, 756 F. App'x 746, 746-47 (9th Cir. 2019) ("Clinical interviews and mental status evaluations are objective measures that cannot be discounted as a self-report.") (quoting *Buck*,

869 F.3d at 1049) (internal quotation marks omitted).  Although the Commissioner contends that the only objective finding was an "apprehensive mood" (Joint Stip. at 12), this is incorrect; Dr. Erhart also found that Plaintiff's "affect was restricted" and that her thought content included "susceptibility to irrational fears as well as accompanying indecisiveness and compulsive behaviors."  (AR 316-17.)

Third, the ALJ's statement that Dr. Erhart's opinion is inconsistent with her activities of daily living and minimal treatment, without elaboration, is too general to be considered adequately explained.  *See Morinsky v. Astrue*, 458 F. App'x 640, 641 (9th Cir. 2011) (finding an inadequate discussion of a critical part of an examining psychiatrist's opinion where "the ALJ's rationale [was] implied" regarding the claimant's daily activities).  Even if the Court were to try to discern the agency's path to this finding, *see Brown-Hunter*, 806 F.3d at 492, it would not reveal a sufficient reason to reject Dr. Erhart's opinion, based on the activities of daily living and minimal treatment upon which the ALJ apparently relied.  The activity of daily living that Dr. Erhart found to be compromised was driving (AR 317), which was consistent with evidence that Plaintiff left her last job because she reportedly could not drive to the job location (AR 555) and generally avoided driving (AR 251).  Plaintiff's treatment, at various times, consisted of Wellbutrin, Remeron, Xanax, Lamictal, Diazepam, and Clonazepam (AR 491-92), which are not considered conservative treatments.  *See Carden v. Colvin*, 2014 WL 839111, at *2-*3 (C.D. Cal. Mar. 4, 2014) (collecting cases).  Thus, this was not a specific and legitimate reason based on substantial evidence to reject the treating physician's opinion.

Finally, the opinions of the non-examining state agency physicians, Dr. Barrons and Dr. Liss, did not constitute substantial evidence that was sufficient to reject Dr. Erhart's opinion.  The state agency physicians did not examine Plaintiff or rely on any independent clinical findings that Dr. Erhart did not consider.  *See Haagenson v. Colvin*, 656 F. App'x 800, 802 (9th Cir. 2016) ("Here, the two state physicians never even examined Haagenson, and they did not rely on any independent clinical findings in forming their opinions.  Accordingly, their

opinions do not constitute substantial evidence justifying the rejection of [the treating physician's] opinion.").

## II.    Remand For Further Administrative Proceedings Is Warranted

The ALJ did not state specific and legitimate reasons based on substantial evidence to reject the examining psychiatrist's opinion.  Because the examining psychiatrist's opinion potentially could change the ALJ's remaining findings for steps three to four and the residual functional capacity determination, it is unnecessary to address Plaintiff's remaining arguments.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach this alternative ground for remand."); *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990) ("Because we remand for reconsideration of step three, we do not reach the other arguments raised.").  Moreover, the Court rejects Plaintiff's argument that she is entitled to an award of benefits because evidence from the record should be credited as true.  (Joint Stip. at 33-34.)  The record raises outstanding factual issues about Plaintiff's level of functioning, rendering it inappropriate to credit any evidence in the record as true.  *See Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. 2017) (crediting evidence as true where factual issues are outstanding is inappropriate because "this reverses the required order of analysis") (quoting *Dominguez v. Colvin*, 808 F.3d 403, 409 (9th Cir. 2015)).  Upon remand, the ALJ is not precluded from reassessing any evidence, including the examining psychiatrist's opinion.

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED AND REMANDED for further administrative proceedings consistent with this Order.

//

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and counsel for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: November 26, 2019

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE